BERNHARDT J. JOBST, APPELLEE, v. HAYDEN BROTHERS, APPELLANT.

FILED JUNE 11, 1909. No. 15,612.

1. Parties: NONJOINDER: WAIVER. Where the fact that a defendant is jointly interested with the plaintiff in the subject of the action appears upon the face of the petition, the objection that such defendant is not made a party plaintiff is waived by a failure to demur upon that ground.

2. Appeal: PARTIES. A judgment rendered in a suit in equity will not be reversed for the reason that a party who should have been made plaintiff is made defendant instead, when the party against whom judgment is rendered is not prejudiced thereby.

3. Contract: EXTRAS. Where a contractor, with the knowledge and consent of the owner, and under direction of the architect, but

without a written order, performs extra work entailing additional expense, he will not be precluded from recovering reasonable compensation therefor by a clause in the contract which provides that no alteration shall be made in the work done or described by the drawings and specifications except upon a written order from the architect.

4. ———: CONSTRUCTION. Where the parties have acted upon and construed a contract, in the absence of any mistake or misunderstanding between them the court will enforce such contract as so interpreted.

5. ———: PERFORMANCE: WAIVER. Where a contract requires a building to be erected by a specified time, the naked promise of the owner to waive the time clause, made without consideration, is invalid, and such owner is not thereby estopped to claim damages for such delay when it does not appear that the contractor acted upon such promise.

6. ———: ESTOPPEL. Such promise will, however, estop the owner from insisting upon a stipulation of the contract which provides that no allowance shall be made for delays caused by the owner unless a claim therefor is presented in writing to the architect.

7. Appeal: FINDINGS: EVIDENCE. Where there is no finding of the district court upon a material fact, and the evidence in the record is not directed to the ascertainment thereof, the case will be remanded for further proceedings.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Reversed.*

*Smyth & Smith,* for appellant.

*Gurley & Woodrough* and *Isaac E. Congdon, contra.*

CALKINS, C.

This was an action by the plaintiff to foreclose a mechanic's lien upon a building which he had erected under a written contract with the defendant Hayden Brothers, a corporation, hereinafter called the owner. A portion of his claim was for the remainder of the contract price, to which were added for extras sundry items. The owner contested a portion of these claims for extras, and demanded a large sum for defects in construction and damages for delay in the completion of the building. The dis-

trict court allowed part of plaintiff's claim for extras, and deducted from the plaintiff's contract price for defects in construction, $100 for the freezing of the west wall, and $500 on account of defective floor topping. It found that the owner agreed to and did release the plaintiff from any and all claims for damages on account of delay in completing the building, and rendered judgment against it for the sum of $9,520.38.

1. It appears that the plaintiff first entered into a contract with the owner for the construction of a building, which was designed with re-enforced concrete columns, on the 28th day of March, 1905; that the city inspector, not being at that time acquainted with this method of construction, refused to approve the plans, and the design was changed so as to call for steel columns in place of the other; and that on April 12 an additional contract was made providing for the latter construction and for the payment of the increased expense that the same entailed. Between the date of the execution of these two contracts, a contract was entered into between the plaintiff, on the one part, and the defendants Lehmer and Collins, on the other, which recited that the latter had the exclusive agency for a certain system of re-enforced concrete construction, and provided that certain specified parts of whatever work of that class should be contracted for by the plaintiff should be executed by the said Lehmer and Collins.

After the making of the contract between the plaintiff and the owner, the plaintiff entered into a supplemental contract with Lehmer and Collins in reference to the construction of the Hayden building, under which the plaintiff agreed to execute certain specified parts of such construction, and the said Lehmer and Collins agreed to execute certain other parts, each for a fixed price. The plaintiff filed a mechanic's lien for the entire amount claimed to be due upon the contract, and Lehmer and Collins filed a lien for the amount claimed to be due them,

on the theory that they were to be regarded as subcontractors. The court found that the plaintiff and Lehmer and Collins were a partnership, but permitted the plaintiff to prosecute this action for the use of such partnership, and in entering its decree made the same for the benefit of the plaintiff and the said Lehmer and Collins. There is no contest between Jobst and Lehmer and Collins, but the owner questions the right of Jobst to bring the suit in his own name. Whether the agreement referred to constituted Lehmer and Collins partners with Jobst, or simply made them subcontractors, we do not deem it necesssary to determine. If such agreement did constitute a partnership, then the action should have been in the name of all the members of the firm. Under this assumption there was a defect of parties plaintiff, which constitutes the fourth ground of demurrer under section 94 of the code. Section 96 of the code provides that, if no objection be taken either by demurrer or answer, the defendant shall be deemed to have waived the same. The facts concerning the interest of these parties were fully disclosed upon the face of the petition, and the owner therefore waived the same by a failure to demur.

2. Further, section 145 of the code requires that no judgment shall be reversed on account of any error which does not affect the substantial rights of the adverse party. In this case all the parties were before the court, and the owner is as fully protected against any claims that might be made by Lehmer and Collins as it would have been had they been made parties plaintiff instead of defendants. It is not pointed out how the owner is prejudiced by this alleged error of the court, and, in the absence of such prejudice, the judgment should not be reversed, even assuming the position of the owner as to the proper parties to be correct.

3. The owner complains that the allowance of $100 for the defect in the west wall and $500 for defects in the topping of the floor was insufficient, and we are asked to re-examine the question of fact passed upon by the lower

court. After a careful reading of a most voluminous record, we are unable to say that the court below should have arrived at a different conclusion than was reached. There was evidence which would have justified a conclusion that the work was very poor in quality, and, opposed to this, testimony that the work fulfilled the conditions of the specifications of the contract. Under these circumstances the finding of the district court will not be set aside.

4. The contract contained the provision: "No alteration shall be made in the work done or described by the drawings and specifications except upon a written order from the architect; and when so made the value of the work added or omitted shall be computed by the architect, and the amount so ascertained shall be added to or deducted from the contract price." The court included in its decree six items for which it is contended the architect had not made a written order, and it is insisted as a matter of law that, under the above quoted provision, they cannot be allowed. Only two of these items are argued in the brief. It is admitted that, on account of the caving in of the earthen embankment during the winter, it was found expedient to extend the basement and subbasement some eight feet farther into the street than was originally intended. This involved going that distance beyond the curb, which was the boundary according to the original plans. It necessitated additional brick work and the use of heavier steel to support the weight of the roadway above. It is not contended that the work was not performed with the knowledge and under the direction of the architect, and that it did not impose an extra burden and additional expense upon the contractor. The other item was for a change in the form of foundation in the northern part of the west wall made necessary, or at least expedient, by conditions which we will notice more fully hereafter. It is enough to say that it was found impracticable to proceed with the work in this part of the construction according to the original specifications. There

was a sketch or plan for the new work, which the testimony shows was approved by the architect; but this document had apparently been lost at the time of the trial. There is no question made as to the merit of these claims, but it is insisted that the above quoted clause in the contract prohibits their allowance. We do not think this clause susceptible of the construction contended for. It does not provide that the contractor shall forfeit his right to compensation for extras performed by him at the request of the owner or the architect without the written direction stipulated for. The evidence abundantly establishes that the extras so complained of were performed at the direction and upon the request of the owner and architect, and the clause in the contract quoted does not prevent their allowance.

5. The building in question was designed to occupy the entire area of the lot, which was 62 by 132 feet. It fronted on Douglas street, and was bounded on the east by the Boston store and on the north by the Patterson building, both owned by the Brandeis Company. There were two stories below the level of Douglas street, and these were planned to reach under the sidewalk, and later were extended under a portion of the roadway. The preparation of the site involved the excavation of the entire lot to a depth of from 20 to 30 feet, and this part of the work had been largely executed when the first negotiations took place between the plaintiff and the owner. The contract for the grading had been let by the owner to one Jackson nearly a year before, and it was well understood by the parties that the plaintiff was not to do any portion of the excavating. Nothing is said in the contract proper about the excavating, but in the specifications there is a clause requiring the contractor to excavate to the proper depth. It is said by counsel for the owner in their brief that Jobst was to do the excavating, but this position is not very seriously insisted upon. It is undisputed that all the parties acted upon the understanding that the plaintiff was under no obligation to do

the excavating, and that they so construed the contract. It is a settled principle of construction that, where the parties have acted upon and construed a contract, in the absence of any mistake or misunderstanding between them, the court will enforce the contract as so interpreted.

6. The contract provided that the plaintiff was to finish and deliver to the owner the subbasement and basement on or before the 1st day of June, 1905, and to complete and turn over the whole building on or before the 1st day of September in the same year, and it contained the stipulation that, if the contractor should fail to deliver said building complete in every respect on the 1st day of September, 1905, he should pay the owner as liquidated damages the sum of $25 a day for each day after the 1st day of September, 1905, until the building should be delivered by him, unless he was prevented from so doing by some of the causes which the contract provided should be a sufficient excuse for delay. The building was not in fact completed until the following June. The evidence shows that the rental value of the building complete exceeded the sum of $25 a day, and the owner claims that it should be allowed that amount under the provisions of this contract. The plaintiff claims that the delay in the completion of the work was caused by the failure to finish the excavation, and, further, that in July, 1905, the owner agreed to waive the time clause in the contract. The court below made no finding as to the cause of the delay, but found that the owner waived the time clause, and agreed to and did release the plaintiff from any and all claims on account of delays in completing the building within the time limited in the contract. The owner argues that the evidence does not sustain this finding, but a careful reading of the testimony convinces us that this contention cannot be maintained, and that the finding of fact by the district court is fully sustained. Further, the owner insists that, if such a promise was made by it, it was without consideration and therefore invalid as a contract, and that it was not acted upon by the plain-

tiff so as to estop the owner from insisting upon its invalidity. We are of the opinion that the contention of the owner upon this point must be sustained, and that its promise to waive the time clause, being without consideration, is void as a contract, and that, the plaintiff not being shown to have acted upon the same, the owner is not estopped now to make a claim for such damages.

7. It does not, however, follow that the promise of the owner, though not amounting to a contract nor estopping it to claim damages for delay, had no effect whatever. The provision of the contract respecting delays which should extend the plaintiff's time for the completion of the building was as follows: "Should the contractor be obstructed or delayed in the prosecution or completion of his work by the act, neglect, delay or default of the owner or architect or any other contractor employed by such owner upon the work, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid. But no such allowance shall be made unless a claim therefor is presented in writing to the architect within 24 hours of the occurrence of such delay. The duration of such extension shall be certified to by the architect." It does not appear that the plaintiff made a claim in writing to the architect for an extension of time in accordance with these provisions, and it is very strenuously insisted that, in the default of having taken such action, he is precluded now from showing that he was delayed by the fault of the owner or other contractors. If it be true, as the district court found, and its finding as we have seen must be here sustained, that the owner made this agreement, and the plaintiff, relying upon its promise, neglected to make his claim in writing, we think the owner should be and is estopped to insist upon the provisions of this clause. It would have been an idle act for the plaintiff to ask an extension when the owner had already promised not to insist upon the completion of the building at the time stipulated. Such

a promise naturally lulled the contractor into a sense of security, and was well calculated to prevent him from taking steps under the provisions of the contract quoted. We therefore conclude that the plaintiff was entitled to an extension of the time equal to the period of delay caused by the failure of the owner to have his property in condition for the erection of the building.

8. The excavation necessary to prepare the site for the building was nearly completed at the time of the making of the contract in question. There was some earth which had washed in during the winter, and holes for the piers to be dug, and a quantity of earth remaining under a bridge or runway to be removed. It was necessary to excavate a few inches deeper over most of the surface, and there was a bank of earth extending some feet from the line yet to be excavated on the north part of the west boundary of the building site. The east wall of the Patterson building was flush with the west line of the proposed building for about 60 feet from the line of Douglas street, at which point there was a jog of 7 feet to the west; and from there to the rear of the lot the east wall of the Patterson building was about 7 feet west of the west line of the lot. It does not appear in the evidence how far below the surface the foundation of this part of the Patterson building was carried, but it sufficiently appears that it was very much above the grade of the new building, and that the excavation upon this part of the site could not be safely made until this portion of the Patterson building was in some way supported. But for this the work necessary to complete the excavation of the lot could have been performed in ten days or two weeks. In fact, it was not practicable for the plaintiff to install the foundations in this part of the work until long after the time in which the whole was to have been completed. It is true that other portions of the work were carried up, but that the work was done at a disadvantage and that considerable delay was caused by the failure to have this part of the site in a proper condition to permit the

installation of the foundations is evident. On the other hand, we are not satisfied that all the delay was chargeable to this cause. The district court made no finding as to how much delay was caused by the owner's failure to have the site in proper condition, and how much was owing to other causes for which the owner was not responsible. The evidence does not seem to have been directed to this question.

We think the case should be remanded to the district court, with instructions that a finding be made, upon this question only, upon the evidence already taken, and such other evidence as may be produced, and that the owner be allowed the stipulated damages for the delay, after deducting such delays as were properly chargeable to its action or failure to act, and that the judgment be modified if such findings render it necessary. It appears that work of this character cannot properly be executed in freezing weather, and, if the giving to plaintiff of such extension as he may be entitled to should postpone the date of completion into the period of freezing weather, then and in such case the period during which such work could not be safely prosecuted on account of frost should be deducted from the period of his delay.

We therefore recommend that the judgment of the district court be reversed and the case remanded for further proceedings in accordance with this opinion.

DUFFIE, EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED.