## PASSAIC VALLEY SEWERAGE COM'RS v. HOLBROOK, CABOT & ROLLINS CORPORATION.

(Circuit Court of Appeals, Third Circuit. July 24, 1925.)

No. 3284.

**1. Contracts ⬅162—Provision in contract repugnant to right therein created is void.**

Provision in contract repugnant to right therein created is void.

**2. Contracts ⬅113(1)—Person cannot contract against his own fraud.**

Person cannot contract against his own fraud.

**3. Municipal corporations ⬅352—Provision in sewer construction contract held not to relieve commissioners from liability for misrepresentations.**

Note appended to sewer construction contract drawings, in effect denying representations in drawings as to subsurface condition, constituted warranties, and disclaiming liability of sewer commissioners based on such representations *held* not to relieve commissioners from liability to contractor for conscious misrepresentations as to subsurface conditions; contractor having relied on them.

**4. Appeal and error ⬅1066—Submission of question of rescission on ground of mistake, if erroneous, because not justified by evidence, held not prejudicial.**

Submission of question of rescission on ground of mistake in making certain false representations, if erroneous, because not justified by evidence, *held* not prejudicial, where the misrepresentations, if based on mistake, were sufficiently material to justify a rescission, and, if not so based, they were, under the evidence, either fraudulent or a breach of warranty.

**5. Contracts ⬅270(1)—Party desiring to rescind must do so within reasonable time after discovering ground therefor.**

Party desiring to rescind must do so within reasonable time after discovering ground for rescission.

**6. Contracts ⬅270(1)—Duty to rescind does not arise until establishment of ground for rescission.**

Duty to rescind does not arise until establishment of ground for rescission.

**7. Municipal corporations ⬅354—Delay in rescinding contract held not waiver of right.**

Failure of a sewer contractor to rescind a contract with a sewerage commission until six months after he had discovered falsity of representations of commissioners, as to subsurface conditions surrounding earth to be tunneled, *held* not a waiver of right to rescind, in view of magnitude and nature of work involved and its peculiar difficulties.

**8. Appeal and error ⬅1026—Error which is not prejudicial affords no ground for reversal.**

Error which is not prejudicial affords no ground for reversal.

6 F.(2d)—46

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Suit by the Holbrook, Cabot & Rollins Corporation against the Passaic Valley Sewerage Commissioners. Judgment for plaintiff, and defendants bring error. Affirmed.

Riker & Riker, of Newark N. J. (Alfred F. Skinner, Adrian Riker, and Irving Riker, all of Newark, N. J., of counsel), for plaintiffs in error.

John W. Griggs, of New York City (Thomas F. Conway, of New York City, John W. Harding, of Paterson, N. J., and Joseph A. Kellogg and Thomas E. O'Brien, both of New York City, of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The sanitary drainage of the Passaic Valley and the municipalities there located was conceived in 1902. The execution of the project was, by various acts of the Legislature of the State of New Jersey, entrusted to a commission created for that purpose with powers of a corporation and known by the name of Passaic Valley Sewerage Commissioners. It was a large undertaking, contemplating the removal of sewage from a wide, thickly populated area and carrying it out to sea through a subterranean and submarine tunnel. It involved the solution of wholly new and highly perplexing engineering problems and the expenditure of large sums of money.

Before entering upon the work, the Commissioners laid out a line of the proposed tunnel, beginning inland and extending down to and through the earth under the waters of New York Bay. According to the general plan it was intended that the sewage should be collected in the valley, then conducted under pressure through a circular concrete tunnel twelve feet in diameter to a terminal chamber situate well out in the bay and thence discharged into the tidal waters. The construction was divided into two parts. Section 1 had to do with long distributing pipes or fingers radiating from the terminal chamber, a phase of the work before this court in Passaic Valley Sewerage Commissioners v. Tierney, 1 F. (2d) 304. Section 2, which is the part here involved, included the construction of the terminal chamber and a sewage tunnel extending from the chamber inland 15,000 feet, of which 9,400 feet were under the water of the bay and 5,600 feet under the adjacent upland.

After locating the line the Commissioners conducted a carefully planned system of borings, both in the upland and in the earth beneath the bay, in order to determine before letting contracts the character of the materials through which the tunnel would be driven. These borings—wet and dry—were made on both sides of the line of the tunnel and at points varying from 25 to 100 feet distant therefrom and at intervals of 500 feet. Pursuant to good engineering practice, they were not made in the line of the tunnel, for that would create just so many artificial air vents—a thing manifestly undesirable in driving a tunnel under air pressure. They were made off-side the line yet close enough to the line, and to one another, to disclose approximately and fairly the character of the earth material between. After the borings had been completed and the field notes tabulated, the Commissioners caused drawings to be made, purporting to show, elaborately and particularly, the character of the materials found and, therefore, the character of the materials which contractors would expect to encounter when doing the work. These drawings indicated that at every boring, save one, a "cemented Triassic formation" was found; that is, a formation or earth substance of the named geological period, which, being practically impervious, would prevent the water of the bay seeping into the tunnel workings and prevent the air conducted to the operation under pressure escaping to the water and thence to the surface. Based on the borings, these drawings showed generally that under the water of the bay, for a distance of 9,400 feet, the material consisted first of a layer of mud, beneath that sand and some boulders, and below that (in and overlying the path of the tunnel) a cemented Triassic formation of a thickness of about 30 feet throughout—practically sealed working conditions.

On this data the Commissioners entered into a contract with the O'Rourke Engineering Construction Company for the construction of the part of the work embraced within section 2. After driving the tunnel 4,489 feet—a relatively small part being under the bay where cemented Triassic formation was indicated—that concern, it is said, failed to find formation of that kind and abandoned the work. The Commissioners then entered into a contract with C. A. Haskins to continue the work left unfinished by O'Rourke. The Haskins contract drawings showed the same blanket of cemented Triassic formation in and overlying the line of the tunnel in the part under the bay. Haskins, it is said, finding no formation of that character, also stopped. (We wish it to be understood that nothing in this opinion is intended to have any bearing on the litigation which followed these stoppages of work and which, we are informed, is still pending.)

When Haskins quit he had reached a point which left 3,000 feet of so-called "rock" tunnel and 3,000 feet of so-called "soft ground" tunnel to be constructed, a part of which was under the fast land and a part under the bottom of the bay. The terminal chamber was yet to be constructed and the concrete lining in certain portions of the excavations to be put in place.

To finish the work thus left uncompleted the Commissioners asked for bids on drawings given the earth formations we have described. But in showing the borings and making representations as to sub-surface conditions the Commissioners appended to the blue prints (afterward constituting contract drawings) a note reading as follows:

"Note.—The borings, soundings, contour lines, profile, and indications of rock outcroppings, sub-surface materials, pipes and other underground structures are supposed to be approximately correct, but should they be found to be otherwise the contractor shall have no claim on that account, it being expressly understood that the Commissioners do not warrant the plot to be approximately correct."

Holbrook, Cabot & Rollins Corporation was one of the bidders. That concern did not make its own investigation of earth conditions nor did it resort to the field notes or with much care to the boring samples of the Commissioners, which, had it desired them, were available, but relying (as it claimed) upon the Commissioners' representations as to earth formation it made a bid and was awarded the contract.

In due course the Holbrook, Cabot & Rollins Corporation embarked upon the work, but after advancing the tunnel a short distance it encountered gravel, quick sand, bull liver, boulders and other pervious materials instead of a blanket of cemented Triassic formation. Within a reasonable time it disclosed these conditions to the Commissioners. After going still farther in the work to ascertain with certainty the exact earth materials, it found nowhere the cemented Triassic formation which the contract drawings indicated would be found everywhere. This corporation then rescinded the contract on the grounds of breach of warranty, misrepre-

sentation, mistake and fraud, and brought this suit on quantum meruit to recover the actual cost of the labor performed, services rendered and materials furnished in the work. The Commissioners traversed all the plaintiff's allegations of fact and, as a special defense, interposed a claimed lack of liability under the quoted note on the contract drawings. They asserted, in addition, that, in any event, the plaintiff was not required to rely, and that in fact it did not rely, upon their representations of sub-surface conditions, and that it knew, or was charged with the knowledge, that the formation was glacial drift, of which pervious gravel and boulders are a characteristic. The plaintiff had a verdict for $765,422.82 and interest and to the judgment entered the defendant sued out this writ of error.

During the trial of this case, which extended over six weeks, innumerable objections to testimony were entered, rulings made and exceptions noted. On some of these rulings and on certain instructions upon the law made by the court in its charge to the jury the Commissioners (here the plaintiff in error) base one hundred and thirty-one main and subsidiary assignments of error calling for the consideration of as many separate and distinct subjects matter to which they are addressed. We have labored through this mass of assignments and have carefully studied each one. The result of our work verifies the observation of this appellate court that when a trial judge has a proper grasp of a case and conducts the trial upon correct principles of law, it is likely that he will commit few errors and that such purely technical errors as in the stress of trial he may commit will be negligible in the sense of being not prejudicial. Therefore in this review we first addressed ourselves to the law of the case and found that, notwithstanding the more than one hundred assignments of error, the case really turns on three or four questions which pervade nearly all of them, and that on the law of these questions the learned trial judge had a firm hold. The first, and the most important, is whether the Commissioners were saved by the self-exonerating note appended to the contract drawings from liability for representing to the contractor sub-surface conditions different from the true conditions known to them, and whether, accordingly, the question of misrepresentation as a question of fact was, in view of the note, properly one for the jury. The case was submitted and a verdict rendered. Therefore we must accept the verdict of the jury as having established certain facts. These are, that the Commissioners intended the contractor to rely upon their representations and that the contractor did rely upon them; that the representations were false in the sense of being different from the conditions which, from the borings and the disclosures made in the O'Rourke and Haskins operations, the Commissioners knew to exist; that the difference between the conditions as represented and as existing operated disadvantageously to the contractor in that it called for work of a wholly different character at a highly increased cost; that the Commissioners' misrepresentations, though no sinister intentions were involved, were in law technically fraudulent; and that the contractor, in consequence, suffered substantial pecuniary damage. It will be enough to say that these findings of fact are sustained by the evidence. Accepting them, as we must, the question of law is narrowed to whether the Commissioners can escape liability for their conscious misrepresentations because of the note appended to the contract drawings in which they denied that their representations were warranties and disclaimed liability for what they said and did.

[1, 2] In respect to the right of the contractor to rely on the Commissioners' representations, it is a familiar rule of construction that a provision in a contract repugnant to a right therein created is void. This rule has been followed by the Supreme Court in construing protective clauses of contracts very like in words and entirely similar in substance to the one under discussion. While there are many cases in which the courts have interpreted such provisions we shall refer to only three which, because of their substance and source, are controlling and rule the case at bar.

The first is Hollerbach v. United States, 233 U. S. 165, 34 S. Ct. 553, 58 L. Ed. 898, in which the Supreme Court held that a positive statement in a contract as to present conditions of the work must be taken as true and binding upon the Government, and that loss resulting from a mistaken representation of an essential condition should fall upon the Government, the party that made it, rather than upon the contractor, even though there are provisions in other paragraphs of the contract requiring the contractor to make an independent investigation of facts.

The same court made a ruling in Christie v. United States, 237 U. S. 234, 35 S. Ct.

565, 59 L. Ed. 933, citing Hollerbach v. United States, which differed from the ruling in the latter case only in the respect that it does not matter, when there were misrepresentations of fact on which it was intended that the bidder should rely and on which he did rely that they were not made with a sinister purpose.

The last case on the subject and one containing facts which resemble closely those of the instant case is United States v. Atlantic Dredging Co., 253 U. S. 1, 40 S. Ct. 423, 64 L. Ed. 735, where the self-exonerating clause in the contract there in question was similar to and just as strong as the clause here in question. In that case the Supreme Court, citing its previous decisions, announced the law that, when a governmental body has asked for bids for excavation work and has represented the condition of the material to be excavated, and in its representations had misstated facts, or has failed to state facts, within its knowledge, it cannot escape responsibility by a clause of the contract in which it required bidders to examine the work for themselves and in which it said that its statements of facts were but expressions of its opinion and that it did not guarantee them. This, in effect, was a holding that representations made in such circumstances import a warranty, and also that, in consonance with familiar law, a person cannot contract against his own fraud.

[3] Counsel insist that these are not pronouncements by the Supreme Court of a general rule of law but are merely statements of the law applicable to the facts of the particular cases in which they were made. True, as in every case, the Supreme Court announced the law in the consideration of facts of the cases in hand, yet the statements are none the less pronouncements of law and are broad enough to admit of application in cases involving facts and acts of like character. And of this view evidently was the learned trial judge in whose rulings and instructions on the law in this respect we have found no error. United States v. Utah, Nevada & California Stage Co., 199 U. S. 414, 26 S. Ct. 69, 56 L. Ed. 251; Hollerbach v. United States, 233 U. S. 165, 34 S. Ct. 553, 58 L. Ed. 89; Christie v. United States, 237 U. S. 234, 35 S. Ct. 565, 59 L. Ed. 933; United States v. Spearin, 248 U. S. 132, 136, 39 S. Ct. 59, 63 L. Ed. 166; United States v. Atlantic Dredging Co., 253 U. S. 1, 40 S. Ct. 423, 64 L. Ed. 735.

The next question of serious concern has to do with the validity of the rescission of the contract. The contractor based its action on several grounds: Breach of warranty, mutual mistake of facts, and misrepresentations amounting in law to fraud.

[4] In view of the testimony showing the Commissioners' definite knowledge of subsurface materials, we are not certain that a mistake by the Commissioners in making their representations of earth conditions was the true ground for rescission. (At any rate it was a debatable ground.) But even if it were not, a submission of the question of rescission on that ground was not prejudicial to the Commissioners for if their representations were based on mistake they were sufficiently material to justify rescission, and if they were not based on mistake, the representations were, under the verdict of the jury rendered on ample evidence, either fraudulent or a breach of warranty. Being one or another of these grounds, the vital question is whether the contractor seasonably exercised its right to rescind or whether by delay it waived its right. On this issue we find the court's charge to the jury sound and the evidence sufficient to sustain the finding.

[5-7] It is, of course, a general principle of law that a party who desires to rescind a contract must do so within a reasonable time after discovering the ground for rescission. Or, stated differently, if a party, after discovering a valid ground for rescission, choose to go on with the contract and does go on with it, his choice is final. He is not permitted to go on and at the same time retain his right to rescind. But, as the jury found, that was not what happened here. In this case the Commissioners made clear representations as to earth formation on which the contractor had a right to rely and on which it did rely. When it started to work it did not find the conditions as represented. If it had attempted to rescind the contract immediately we doubt that it could have prevailed because a rescission to be valid must be based on a material ground for such action. What was a material ground in work of this magnitude could be determined only by some investigation. The contractor had engaged to drive a tunnel into the earth for a distance of 6,000 feet. What would be disclosed a foot or a hundred feet beyond the shield could be determined only by running the tunnel a foot or a hundred feet. We surmise that the contractor did not have a right to rescind if on the first foot, or perhaps on the first one hundred

feet, it had found a formation different from that represented by the contract drawings. The underground conditions which it discovered in its operations had to be substantially and materially different from what had been represented before the contractor's right to rescind would arise. This took work and time. The initial discovery occurred in December, 1922, or in January, 1923—almost at the beginning of the tunnel driving. The contractor did not regard this as ·serious. However, in February, 1923, it was growing apparent that things were different from what the Commissioners had represented and the contractor called it to their attention, but stated that it would go on some time further and some distance farther to determine whether the Commissioners' representations of sub-surface conditions were correct, expressly (though quite uselessly) reserving to itself the right to rescind. Of course, a reservation of a right to rescind when the duty to rescind is immediate is of no avail, but the duty to rescind does not arise until the ground for rescission has been established. This occurred late in the spring of 1923, and in July the contractor acted. Did it wait too long? In work of some kind a delay of that length would obviously amount to a waiver. But in the light of the magnitude of the work here involved, its difficulties, the hidden substances to be removed, and the possibility that they would change in character with each foot the tunnel was advanced render it impossible to say that a delay of about six months after discovering that the conditions were different from what had been represented was an unreasonable time within which to exercise the right of rescission.

The Commissioners by various assignments of error complain not only of lack of evidence on which to submit the case to the jury but of a characteristic of the judge's charge by which, it maintains, he withdrew from the jury the weight of the evidence on the capital issue of plans and misrepresentations and practically dictated their findings. We do not read the charge in that way. The learned trial judge told the jury that the Commissioners' representations of earth conditions amounted to a warranty and that, if they found the representations different from what the Commissioners knew existed, they might find a breach of the warranty and render a verdict for the plaintiff. In doing this the trial judge did not weigh the evidence. He gave the jury the law and told them what they could do if they should find certain facts

and left them to find the facts under repeated instructions as to their exclusive fact-finding province.

[8] Turning to the great number of assignments of error, we shall do no more than say that in this immense record, broken by innumerable objections and exceptions, we have found very few rulings or instructions by the learned trial judge which we regard as debatably erroneous, and where such occur we have found ·them to be rulings or instructions which, if technically erroneous, were not prejudicial. Error affords no ground for reversal where it is not prejudicial. Chicago, Rock Island & P. Ry. Co. v. Wright, 239 U. S. 548, 551, 36 S. Ct. 185, 60 L. Ed. 431.

The judgment below is affirmed.