21 F.2d 1 (1927)
SARTORIS
v.
UTAH CONST. CO. et al.
No. 5064.
Circuit Court of Appeals, Ninth Circuit.
August 1, 1927.
Rehearing Denied and Opinion Modified October 10, 1927.
Horace M. Street, of San Francisco, Cal., for plaintiff in error.
B. M. Aikins, of San Francisco, Cal., for defendant in error Utah Const. Co.
Ford, Johnson & Bourquin, of San Francisco, Cal., for defendant in error Southern Pac. Co.
Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.
DIETRICH, Circuit Judge.
Having a contract with the defendant railroad company for the construction of a tunnel, the defendant construction company subcontracted the job to the plaintiff, A. J. Sartoris. The subcontract is dated November 15, 1922, and incorporates, as defining Sartoris' rights and obligations, the principal contract; the only difference between the two being a lower rate of compensation to the subcontractor, leaving a margin of profit to the Construction Company. Payment was *2 to be made at a stipulated price per linear foot for excavating the tunnel, inclusive of the necessary temporary timbering, and at a specified rate per cubic yard for the concrete lining in place. Work under the contract was begun November 18, 1922, and was fully completed December 11, 1923. Both the contractor and the subcontractor were paid in full for all concrete installed, and at the contract rate per foot for the tunnel, and also for certain small extras in respect to which there was no dispute.
The controversy arises in this way: A paragraph in the specifications reads: "Part of the tunnel excavation at each end is expected to be in earth formation, and the remainder in solid rock, with possibly a short distance in loose rock, or a combination of all three." And the cross-sectional drawings conform to this expectation or assumption. In the very early progress of the work, however, the plaintiff encountered a formation of unusually fine, loose sand, which turned out to be continuous along the line of the tunnel for most of the way. It being impracticable to carry on the work in the manner originally contemplated, or to install the concrete lining strictly in accordance with the specifications and drawings, plaintiff laid the matter before the railroad company's engineer in charge, who in turn called for directions from his superiors. The upshot was that, following a conference upon the ground, between the chief engineer and two other engineers for the railroad company, and plaintiff, plaintiff was given new specifications, pursuant to which he prosecuted the work to completion. Under these specifications the concrete lining was made thicker, the tunnel bore was correspondingly enlarged, and very much more extensive timbering was required, most of which was necessarily left in the structure.
Plaintiff was paid extra for only the additional concrete, and his claim now in controversy is for the reasonable cost, said to be approximately $73,000, of the extra tunnel excavation and timbering required by the new specifications. Under the terms of the contract the price per linear foot of tunnel excavation was for all kinds of material without classification, and was to "include all temporary shoring or timbering necessary to support the tunnel while permanent lining is being placed." All such timbering was to be removed by the plaintiff before the concrete lining was placed, "unless the nature of the material encountered made it advisable, in the opinion of the railroad company's engineer," to allow certain timbering to remain. Plaintiff concedes that the timbering done was, under the circumstances, necessary to enable him to place the concrete lining, and that it was wholly impracticable to remove it.
In his complaint, plaintiff pleads his claim in two separate counts, the first as upon an express contract, and the second upon an implied contract. Trial by jury was duly waived in writing, and upon hearing the evidence the court dismissed the action. The evidence being conflicting, and having been resolved against the plaintiff, upon the question of an expressed promise to pay, he has here abandoned his first count or cause of action, and accordingly now relies solely upon the theory of an implied promise. It should be added that he seasonably presented a motion for judgment, which was denied, and also a motion for special findings of fact, with like result, and hence our review extends within certain limitations to a consideration of the evidence. Griffin v. Thompson (C. C. A.) 10 F.(2d) 127; Bank v. Fidelity & Deposit Co. (C. C. A.) 299 F. 478.
First, the liability of the railroad company: True though it may be that it was without conclusive knowledge of the character of the formation when it let the contract, we are of the opinion that the language above quoted from the specifications is to be taken as a representation or assurance on the part of the railroad company upon which plaintiff had the right to rely. These specifications were prepared by the company, and, if ambiguous, are to be construed against it. In form it may be conceded the language is not a positive declaration of fact; but we are concerned with the effect, rather than form, and we are to assume that some meaning was intended. The only conceivable purpose of inserting the statement must have been to influence bidders and affect bids; but, if not taken as a definite assurance respecting the character of the formation, how was it expected it would influence a rational bidder? Or are we to believe that it was inserted with the thought that thereby bidders would be induced to assume that the railroad company had information, not available to them, which gave to the "expectation" a trustworthy basis, upon which it would be safe to bid? This view we should be loath to adopt, for, inasmuch as the company had no such information, it would necessarily imply an intent to deceive.
As we read the language, it was equivalent to saying to prospective bidders or contractors, "You may bid in the expectation," or, "In submitting your bids and in contracting, *3 you may assume, that part of the tunnel excavation will be in earth formation and the remainder will be in solid rock, with possibly a short distance in loose rock, or a combination of all three; and by referring to the accompanying drawings you will see that the design is suited to such, and only such, a formation." So read, it constituted a warranty.
With this construction in mind, we pass to a consideration of subsequent occurrences. Upon the discovery of the true nature of the formation, the impracticability of proceeding in accordance with the contract was recognized upon all hands. It is not highly material that plaintiff did not exercise the right to rescind, or that the suggestion that he be furnished with new specifications, satisfactory to the railroad engineers, came from him, or that he was willing or desired to finish the job. Nor is it important that up to this time there were no contractual relations between him and the railroad company. The company had expressly consented to the subcontract, and through its engineer in charge was directing and supervising plaintiff's work as subcontractor. It did not accept the unexpected formation as sufficient ground for abandoning the project; it wanted the tunnel, whatever might be the formation. Through its chief engineer and his associates it dealt directly with the subcontractor, and provided him with the requested plans to meet the unexpected emergency. While it did not in expressed terms direct him to proceed, it desired that he proceed, and plainly gave him so to understand. Thus, for its benefit, it expressly or impliedly authorized him to enlarge the tunnel bore, measurably to increase the thickness of the concrete lining, and to do extensive timbering in excess of what was contemplated by the original contract. It recognized his right to compensation for the concrete and paid for it but declined to pay for the extra excavation and timbering.
It thus appearing from the unconflicting evidence that the work in question was beyond the calls of the contract, that it was done under the direction and with the approval of the railroad company, and that it resulted in a benefit to it, which it retains, there remains the inquiry whether it knew, or should have known, that plaintiff expected to be paid therefor. Page on Contracts, § 1459. In his testimony that, at the time the plans were adopted, the company's engineer promised compensation, the court below, as we learn from the memorandum opinion, thought plaintiff was mistaken, and, there being a conflict, we do not consider such testimony. But the further important conclusion stated in the opinion, that plaintiff continued with the work and completed the tunnel without making protest or demand for extra pay, is clearly against the evidence. Kirkbride, the engineer for the railroad company, within whose jurisdiction it was to let the contract and to supervise the work, testified that, upon a visit at the tunnel site about the 1st of August, claim was made for the so-called extra work now in controversy. So that, admittedly from that time on, at least, the company knew that for the work he was doing plaintiff was expecting extra pay.
But we think it should have known at an earlier date. It is not a case of a slight change of plans, or the substitution of one plan for another, with little or only doubtful effect upon the cost of performance. Radical changes in construction were required, the additional cost of which all must have at once realized would be very great. As one of the engineers put it, cost was a secondary consideration; the construction must be safely carried out to meet the unexpected condition. Could the railroad company reasonably conclude that the plaintiff, who was under no obligation to proceed unless compensated, would gratuitously go forward with the work at a loss of $200 per day, or $6,000 a month, or an aggregate of more than $70,000 on a $140,000 job? True, it would have been better for plaintiff to have declined to proceed without a definite agreement in writing, but we do not think that, under all the circumstances, his want of caution amounted to a waiver, or should be held to have deprived him of a valuable right. Looking backward, we may see a want of care or foresight in most business transactions that result in litigation. The railroad company, too, was under some obligation to make its position clear. What response, if any, it made when admittedly in July or August it was expressly informed of plaintiff's claim, the record does not disclose; but it did not stop the work.
Touching the defense based upon that clause of the contract which provides that the contractor should not be entitled to any payment for extra work, unless the work was previously authorized in writing by the railroad company, we do not deem it necessary fully to consider whether or not the provision is at all applicable, in view of the breach of warranty respecting the character of the formation and the admitted change of plans, or whether there was an effective waiver. *4 Wood v. City of Ft. Wayne, 119 U. S. 312, 7 S. Ct. 219, 30 L. Ed. 416; The Sappho (C. C. A.) 94 F. 545; Wyandotte & D. R. Ry. Co. v. King Bridge Co. (C. C. A.) 100 F. 197; Passaic Valley, etc., v. Holbrook (C. C. A.) 6 F.(2d) 721; Bartlett v. Stanchfield, 148 Mass. 394, 19 N. E. 549, 2 L. R. A. 625; Wyman v. Hooker, 2 Cal. App. 36, 41 83 P. 79; Jobst v. Hayden, 84 Neb. 735, 121 N. W. 957, 50 L. R. A. (N. S.) 501. After the conference in January between the three railroad engineers and plaintiff, pursuant to the conclusion there reached the engineer in charge prepared and furnished to the plaintiff drawings showing in detail what plaintiff should do. If it be assumed that the contract clause is applicable, and was not waived, these drawings, we think, under the circumstances met its requirements.
As to the Utah Construction Company, we conclude, with the lower court, that no liability is shown. It was not represented at the January conference, had nothing to do with the new plans, and received no benefit from the work. As to it, therefore, the plaintiff's complaint was properly dismissed. In view of the uncertainty as to the status of its counterclaim, however, and to the end that there may be but one judgment in the case, we deem it better to reverse the entire judgment, with instructions to enter a judgment upon the record as it stands, in favor of plaintiff and against the railroad company, for the reasonable cost of the extra work called for by the new plans, exclusive of the concrete, which has already been paid for, the cost to include a reasonable compensation for plaintiff's superintendence, and dismissing the plaintiff's complaint against the construction company, with appropriate disposition of the construction company's counterclaim against plaintiff.
And such will be the order, with costs in this court to plaintiff against the railroad company and to the construction company against the plaintiff.