## UNITED STATES *v.* O'BRIEN, INDIVIDUALLY AND AS A MEMBER OF THE FIRM OF PERKINS & O'BRIEN.

### ERROR TO THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 108.   Argued March 17, 1911.—Decided April 3, 1911.

The word "annul" as used in the contract involved in this case construed as refusing to perform further, not to rescind or avoid.

A government contract which makes the right of the contractor to continue work under the contract depend upon the approval of the engineer in charge will not in the absence of express terms be construed as making the dissatisfaction of such engineer with progress of the work conclusive of a breach.

Where, except for the prohibition of the United States to allow the contractor to proceed, the work might have been finished within the specified period, the United States cannot claim a breach entitling it to annul the contract and hold the contractor responsible for difference in cost of completion.

163 Fed. Rep. 1022, affirmed.

THE facts are stated in the opinion.

*The Solicitor General,* with whom *Mr. Assistant Attorney General Denison* was on the brief, for the United States:

The "annulment" of the contract by the engineer was valid. It was made in good faith; it was not premature; and it was duly sanctioned by the chief of engineers.

By the contract the "judgment" of the engineer in charge was made the test of the right to annul. Where, then, he acted upon his "judgment," and not upon any malicious or fraudulent motive, his decision is final, as this and other courts have repeatedly held. *Kihlberg* v. *United States,* 97 U. S. 398; *United States* v. *Gleason,* 175 U. S. 588; *Martinsburg &c. Co.* v. *March,* 114 U. S. 549, 553; *Sweeny* v. *United States,* 109 U. S. 618; *Newman* v. *United States,* 81 Fed. Rep. 122, 126; *Pauly &c. Co.* v.

*Hemphill County,* 62 Fed. Rep. 698, 704; *Crane Elevator Co.*
v. *Clark,* 80 Fed. Rep. 705, 708; *Kennedy* v. *United States,*
24 C. Cl. 122, 141; *Pearce* v. *McIntyre,* 29 Missouri, 423;
*Davenport* v. *Fulkerson,* 70 Missouri, 417; *Allen* v. *Milner,*
2 Car. and J. 47; *Whitehead* v. *Tattersall,* 1 Ad. and El. 491.

The so-called "annulment" referred to in the contract
does not mean a rescission *ab initio,* but is merely intended
to effectuate the termination of the work under the con-
tract on a breach. The use of this word was not intended
to renounce the right of the Government to damages.
*United States* v. *Maloney,* 4 App. D. C. 505; *United States*
v. *Stone, Sand and Gravel Co.,* 177 Fed. Rep. 321; *Kennedy*
v. *United States,* 24 C. Cl. 123.

The abandonment was not technically a rescission of
the contract, but merely an acceptance of the situation
which the wrongdoing of the other party has brought
about. *McElwee* v. *Bridgeport Co.,* 54 Fed. Rep. 627;
*Vickers* v. *Electrozone Co.,* 67 N. J. L. 665, 671; *Cort* v.
*Ambergate Ry. Co.,* 17 Q. B. 127, 148; *Berthold* v. *St. Louis
Co.,* 165 Missouri, 280, 304, 305; *Baldwin* v. *Marqueeze,* 91
Georgia, 404; *Wiel* v. *American Metal Co.,* 182 Illinois,
128; Williston's Wald's Pollock on Contracts, 350, 351;
*Daley* v. *People's Building Assn.,* 178 Massachusetts, 13,
18; *Hayes* v. *City of Nashville,* 80 Fed. Rep. 641; *Cherry
Valley Iron Works* v. *Florence Iron Works,* 64 Fed. Rep.
569, 573; *Hubbartston Co.* v. *Bates,* 31 Michigan, 158;
*Mayor &c.* v. *New York &c. Co.,* 146 N. Y. 210; *Hinsdale*
v. *White,* 6 Hill, 507; *McKeon* v. *Whitney,* 3 Denio, 452,
453; *Marshal* v. *Mackintosh,* Q. B. D., 1898; *S. C.* 46 W. R.
580; *S. C.* 78 Law Times Reports, 750.

There were four distinct breaches of the contract by the
defendants in their failure to prosecute the work dili-
gently; in their becoming financially and otherwise un-
able to complete the work; concerning obstruction of
navigation and in their failure to complete.

Breach of contract in advance of the time set for per-

formance may be found in various forms; it may be. by verbal repudiation through announcement of non-intention to perform. *Hochster* v. *Delatour*, 2 El. and Bl. 678; *Roehm* v. *Horst*, 178 U. S. 1; *United States* v. *Behan*, 110 U. S. 338; *Bank* v. *Hagner*, 1 Pet. 455, 467; *El Paso Cattle Co.* v. *Stafford*, 176 Fed. Rep. 41, 47; *Weber* v. *Grand Lodge*, 169 Fed. Rep. 522, 533; *Michigan Yacht Co.* v. *Busch*, 143 Fed. Rep. 929; *M'Bath* v. *Jones Cotton Co.*, 149 Fed. Rep. 383, 387; *Edward Hines Lumber Co.* v. *Alley*, 73 Fed. Rep. 603; *Bloch* v. *Mayor*, 169 Fed. Rep. 516, 522; *Marks* v. *Van Eeghen*, 85 Fed. Rep. 853; *Hancock* v. *N. Y. Life Ins. Co.*, 11 Fed. Cas. 402; *Grau* v. *McVicker*, 8 Biss. 1; *Ballou* v. *Billings*, 136 Massachusetts, 307, 308.

Or upon the same principle the breach may be found in the inability of the party to perform. *Lovell* v. *Insurance Co.*, 111 U. S. 264; *Louisville Ry. Co.* v. *Pope*, 80 Fed. Rep. 745; *Dougherty* v. *Central National Bank*, 93 Pa. St. 227; *Diem* v. *Koblitz*, 49 Ohio St. 41; *Pratt* v. *Freeman*, 115 Wisconsin, 648; *Stanton* v. *N. Y. & E. R. R. Co.*, 49 Connecticut, 272; *Lockport* v. *Shields*, 87 Ill. App. 150; *Robertson* v. *Davenport*, 29 Alabama, 574; *Holt* v. *United Ins. & Trust Co.*, 76 N. J. L. 585. See also cases of anticipatory breach because of inability shown by bankruptcy. *Carr* v. *Hamilton*, 129 U. S. 252; *Re Neff*, 157 Fed. Rep. 57; *Re Swift*, 112 Fed. Rep. 315; *Re Pettingill Co.*, 137 Fed. Rep. 143, 147; *Ex parte Pollard*, 2 Lowell Dec. 411; *Re Inman Co.*, 171 Fed. Rep. 185; *Lennox* v. *Murphy*, 171 Massachusetts, 370, 373; *Pardee* v. *Kanaday*, 100 N. Y. 121; *New York Phonograph Co.* v. *Davega*, 127 App. Div. (N. Y.) 222; *Woolner* v. *Hill*, 93 N. Y. 576; *Chemical National Bank* v. *World's Columbian Exposition*, 170 Illinois, 82; *Lancaster County National Bank* v. *Huver*, 114 Pa. St. 216; *Ætna Indemnity Co.* v. *Fuller*, 111 Maryland, 321; *Hoyle* v. *Scudder*, 32 Mo. App. 372; *Laclede Power Co.* v. *Stillwell*, 97 Mo. App. 258; *Kalkhoff* v. *Nelson*, 60 Minnesota, 284; *Rappleye* v. *Racine Seeder*

*Co.*, 79 Iowa, 220; *Bank Commissioners* v. *N. H. Trust Co.*, 69 N. H. 621; *Stokes* v. *Baars*, 18 Florida, 656.

Or by disposal, in advance, of the subject-matter of the contract, as in *McGregor* v. *Union Life Ins. Co.*, 121 Fed. Rep. 493; *Camden* v. *Jarrett*, 154 Fed. Rep. 788; *Lowe* v. *Harwood*, 139 Massachusetts, 133; *Hopkins* v. *Young*, 11 Massachusetts, 302; *Canada* v. *Canada*, 60 Massachusetts, 15; *Easton* v. *Jones*, 193 Pa. St. 147; *Bagley* v. *Cohen*, 121 California, 604; *Wolf* v. *Marsh*, 54 California, 228; *Murphy* v. *Dernberg*, 84 App. Div. (N. Y.) 101; *Crist* v. *Armour*, 34 Barb. (N. Y.) 378; *Bolles* v. *Sachs*, 37 Minnesota, 315; *Smith* v. *Jordan*, 13 Minnesota, 264; *Lovering* v. *Lovering*, 13 N. H. 513; *Hunter* v. *Wenatchee Land Co.*, 50 Washington, 438; *Palmer* v. *Clark*, 52 Washington, 345; *White* v. *Lumiere N. A. Co.*, 79 Vermont, 206; *Smith* v. *Carter*, 136 Mo. App. 529; *Southern Texas Tel. Co.* v. *Huntington*, 121 S. W. Rep. 242; *Guthiel* v. *Gilmer*, 27 Utah, 496; *Teachenor* v. *Tibbals*, 31 Utah, 10.

The provision for "forfeiture" of the retained percentages and moneys due is a provision not for liquidated damages, but for security on account of the actual damages; this is shown by numerous considerations, including conclusively the reference to Rev. Stat., § 3709.

*Mr. Frederic J. Swift* and *Mr. George A. King*, with whom *Mr. William R. Conklin* was on the brief, for defendants in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit brought by the United States to recover the extra expense incurred to complete some dredging in Rhode Island, by reason of the failure of the defendants Perkins and O'Brien diligently and faithfully to prosecute the work. The complaint was dismissed by the Circuit Court in accordance with the decision of the Circuit Court of Appeals upon a previous trial, 159 Fed. Rep.

671; 86 C. C. A. 539, and the judgment was affirmed by the Circuit Court of Appeals.  163 Fed. Rep. 1022; 89 C. C. A. 664.

Perkins and O'Brien made a contract with the United States to do the dredging required in improving Providence River and Narragansett Bay between certain points, to begin work on or before March 1, 1899, and to complete it on or before July 1, 1902.   One term of the contract was that if they should fail to begin on time or should, "in the judgment of the engineer in charge, fail to prosecute faithfully and diligently the work in accordance with the specifications and requirements of this contract, then, in either case, the party of the first part, or his successor legally-appointed, shall have power, with the sanction of the Chief of Engineers, to annul this contract by giving notice in writing to that effect,  .  .  .  and, upon the giving of such notice all money or reserved percentage due or to become due to the party or parties of the second part by reason of this contract shall be and become forfeited to the United States; and the party of the first part shall be thereupon authorized, if an immediate performance of the work or delivery of the materials be, in his opinion, required by the public exigency, to proceed to provide for the same by open purchase or contract, as prescribed in § 3709 of the Revised Statutes of the United States:" with a proviso that if the contractors should be prevented by violence of the elements from beginning or completing the work as agreed such additional time might be allowed them as in the judgment of the party of the first part should be just.

Toward the end of the contract, four paragraphs further on than the last, was the further agreement: "In case of failure on the part of the party of the second part to complete this contract as specified and agreed upon, that all sums due and percentage retained shall thereby be forfeited to the United States, and that the said United

States shall also have the right to recover any or all damages due to such failure in excess of the sums so forfeited, and also to recover from the party of the second part, as part of said damages, whatever sums may be expended by the party of the first part in completing the said contract, in excess of the price herein stipulated to be paid to the party of the second part for completing the same."

The work was begun but did not go on satisfactorily. On December 4, 1900, the major of engineers in charge wrote from Newport to the contractors and their surety, now represented by the other defendant, "that from present appearances it does not seem to be possible for the contractors to put on other dredges than the one now supposed to be at work," stating what had been done and what would have to be done before the time allowed expired, and that to do the work, it would need three dredges upon it continuously. The letter proceeded to give the authorized warning that "unless the contractors have on work by January 1st, 1901, a sufficient plant to dredge at least 100,000 cubic yards per month the contract will be annulled." On December 13 the contractors answered from New York, stating that they expected to make an arrangement to put on two more dredges within a few days. On December 29, 1900, the contractors telegraphed that their representative would call upon the major in charge on Tuesday morning, i. e., January 1. On December 31 he replied that the representative could accomplish nothing by coming, and on the same day wrote to the defendants informing them that the contract was annulled. The work afterwards was finished by other parties, at much increased cost. There was no substantial ground in the evidence to attribute the Government's course to anything but the fault of the contractors, which was very plain, and the only question is what liability they incurred.

The sole material express promise of the contractors was to complete the work by July 1, 1902. If the work was done at that date that promise was performed, no matter how irregularly or with what delays in the earlier months. Under its terms the United States was not concerned with the stages of performance, but only with the completed result. See *Bacon* v. *Parker*, 137 Massachusetts, 309, 311. Its interest in the result, however, made it reasonable to reserve the right to employ some one else if, when time enough had gone by to show what was likely to happen, it saw that it probably would not get what it bargained for from the present hands. But it would be a very severe construction of the contract, a contract, too, framed by the United States, to read the reservation of a right to annul, for want of a diligence not otherwise promised, as importing a promise to use such diligence as should satisfy the judgment of the engineer in charge. It is one thing to make the right to continue work under the contract depend upon his approval, another to make his dissatisfaction with progress conclusive of a breach. In this case it was admitted that there was time enough left to finish the work under the contract when the defendants were turned off. It would be a very harsh measure to pronounce the contract broken when but for the prohibition of the United States the defendants might have done the work in time. The right to terminate the employment of the defendants coupled with a provision for monthly payments based upon the amount of material removed, and therefore of course giving little pay for little work, is the protection expressly stipulated by the United States.

Again, the later paragraph that we have quoted, giving the right to recover expense of completing the work in excess of the original price, gives that right only "in case of failure . . . to complete this contract as specified and agreed upon." On their face these words mean failure

to complete by July 1, 1902, not failure to complete because turned off by the engineer in charge, a year and six months before that time arrived, when competent persons still might do the job. The earlier clause under which the so-called annulment took place provides for no such consequence, but only for a forfeiture of reserved percentages and money due. It is true that the expression of the right to proceed to provide for the completion of the contract and the reference to Rev. Stat., § 3709, hardly belong in that part of the contract unless the defendants are liable for the expense, but the contract does not show technical accuracy enough to give this consideration great weight. If the United States wants more it must say so in plainer words.

If the proviso for annulment be not construed to import a promise on the defendants' part, we are of opinion that there is no ground to charge them with a breach of contract. There were suggestions on the Government's part of anticipatory breach, etc., that do not seem to us to need discussion.

We may add one further observation, although it hardly is material, in the view that we take. The ill chosen word 'annul' in the contract, repeated in the notice to the contractors and in the complaint, cannot be taken literally in any of them. It means refuse to perform further, not rescind or avoid. *Philadelphia, Wilmington & Baltimore R. R. Co.* v. *Howard,* 13 How. 307, 340. For, if the contract were made naught by the Government's election and notice, all rights under it would be at an end, whereas it provides in terms that rights shall arise upon annulment, which but for this provision in the contract the Government would not have. The suit is upon the contract, but the United States asks more than in our opinion the contract gives.

*Judgment affirmed.*