Booth, Chief Justice,
delivered the opinion of the court:
The question for decision arises upon plaintiff’s motion for a new trial in the above-entitled case. The motion is predicated solely upon an error of law in the decision of the court. The court’s decision was announced November 1, 1937, the plaintiff’s petition being dismissed. Plaintiff’s present motion is contested by the defendant.
The plaintiff, as the admitted findings of fact disclose, on August 8, 1931, entered into a written contract to dredge the Houston Ship Channel, and among other things ease the bends in the channel at Lynchburg, Norsworthy, Manchester, and Harrisburg.
The plaintiff was to be paid 90 a cubic yard place measurement for all dredging done. He was to commence the work within thirty (30) calendar days after the receipt of notice to commence, and complete the same within the time to be fixed, upon the following basis, i. e., 600,000 cubic yards were *343 to be dredged within a two months’ period and thereafter the rate of progress was to be not less than 400,000 cubic yards a month.
At this rate of progress the Comptroller General calculated that the 5,264,600 cubic yards of material actually dredged should have been dredged by November 30,1932, and fixed the delay in performance as beginning on this date and ending on July 14, 1933, i. e., 227 days at $30 a day, amounting to $6,810, and this sum was withheld by the defendant in its final settlement with the contractor.
The jurisdiction of the Comptroller General to determine the amount of liquidated damages due is not made clear. As a matter of fact, the contracting officer had previously fixed the period of delay at 224 days, subsequently increased to 229 days, and calculated the liquidated damages due as amounting to $6,870. The Comptroller General refunded $60 to the plaintiff on the basis of his calculation.
It is a fact that on November 30,1932, the plaintiff had not attained the maximum of progress provided for in the contract, and it is of course conceded that a liquidated damage clause providing for the deduction of $30 a day for every day of delay attributable to the contractor was part of the contractor’s obligation under the contract. The contractor, however, was at work and the defendant had taken no steps under the contract provisions to prevent his going forward with the same.
June 16, 1933, the contractor was approaching the Manchester easing. Section 21 of the specifications granted the contractor an option to choose one or the other of two described dumping grounds for the dumping of material dredged at the Manchester easing. This option was one of importance to the contractor, for his work was confined to hydraulic dredging and the dumping of the liquefied material was an important factor of the contract work.
The contractor elected to utilize the dumping site on the South Side of the channel known as the Allendale Dump and notified the defendant of his choice. The defendant did not have title to the “Allendale Dump” and it is established that it was not available for the purposes intended. *344 Subsequent to the letting of the contract this dumping ground became involved in litigation as to title thereto, and the litigation was pending when the contractor approached the site.
The defendant recognized the existing obstacles to ¡a strict compliance with the contract. ■ To proceed irrespective of the pending legal controversy meant inviting litigation involving the contractor and the United States. To require the contractor to proceed under the circumstances was certain to cause a suit by him against the United States. In this predicament the parties on July 24, 1933, entered into a. new contract by the terms of which the original contract was terminated, the contractor released from expressed obligations under the old one, and the defendant assumed new ones under the termination contract.
The new contract recites that ‘Whereas, It is found advantageous and in the best interest of the United States to modify the said contract as hereinafter specified * * *. It is therefore to the interest of the Government to omit the Manchester easing and terminate the contract.” The new contract was approved and became effective August 5, 1933.
The contractor by the provisions of the new contract released the defendant from all claims he may have had under the old contract except for sums due and earned, retained percentages under the old contract, for extra work, and the contractor’s claim for remission of all liquidated damages. The defendant paid the contractor for work done under the old contract and withheld percentages, but withheld from the same the sum now sued for as liquidated damages alleged to have accrued under the old contract.
Therefore, the crucial issue in this case arises. May the defendant retain liquidated damages alleged to have accrued under the provisions of a contract which has been terminated by mutual agreement in writing, and the work completed under the provisions of the terminating contract? It is only essential to observe that liquidated damages can not accrue until the. work which the contractor *345 was obligated to perform has been completed under the provisions of the contract providing for its completion.
The old contract in this case fixed the time within which the contractor was to complete the work upon a monthly basis, i. e., no method existed of ascertaining the contractor’s compliance with the contract until the total amount of dredging had been accomplished. The contractor might have proceeded to dredge more than the fixed quantity, of material for each month in the, later stages of the work and thereby have met the terms of the contract.
What the defendant did was to fix a period of time commencing in November or December, 1932, and extending to August 5, 1933, the date of the terminating contract, and assess under a terminating contract an amount for liquidated damages which if it ever accrued did so under a contract which had been terminated and was no longer in existence. What is more, the defendant did this by charging delay to the contractor for every single day of the period when the record clearly establishes that the defendant was responsible for at least a portion of such delay.
The case of United States v. O'Brien, 220 U. S. 321, exemplifies the principle of law involved. The United States was suing to recover extra expense incurred to complete a dredging contract. The contractor was given by the contract until July 1, 1902, to complete the work. On December 31, 1900, the contracting officer annulled the contract, predicating the right to do so upon his determination that at the present rate of progress and facilities employed the work could not be completed on time.
On page 327 of the foregoing opinion the Supreme Court said:
The sole material express promise of the contractors was to complete the work by July 1, 1902. If the work was done at that date that promise was performed, no matter how irregularly or with what delays in the earlier months. Under its terms the United States was not concerned with the stages of performance, but-only with the completed result. See Bacon v. Parker, 137 Massachusetts, 309, 311. Its interest in the result, however, made it reasonable to reserve the right to employ *346 some one else if, when time enough had gone by to show what was likely to happen, it saw that it probably would not get what it bargained for from the present hands. But it would be a very severe construction of the contract, a contract, too, framed by the United States, to read the reservation of a right to annul, for want of a diligence not otherwise promised, as importing a promise to use such diligence as should satisfy the judgment of the engineer in charge. It is one thing to make the right to continue work under the contract depend upon his approval, another to make his dissatisfaction with progress conclusive of a breach. In this case it was admitted that there was time enough left to finish the work under the contract when the defendants were turned off. It would be a very harsh measure to pronounce the contract broken when but for the prohibition of the United States the defendants might have done the work in time. * * * On their face these words mean failure to complete by July 1, 1902, not failure to complete because turned off by the engineer in charge, a year and six months before that time arrived, when competent persons still might do the job.
In addition to what has been said in this case, the defendant precluded the plaintiff from any possibility of performing the contract work on túne. It was entirely due to the fault of the defendant that the plaintiff was deprived of his contract right to proceed to perform the old contract. The defendant and not the plaintiff breached the old contract by its inability to comply with its terms.
This court has had before it this precise question in more than one similar case. It is only necessary to cite them. Fidelity & Casualty Co. v. United States, 81 C. Cls. 495; Commercial Casualty Insurance Co. v. United States, 83 C. Cls. 367; Hampton, Executor of Young, v. United States, 82 C. Cls. 162; United Engineering and Contracting Co. v. United States, 47 C. Cls. 489.
If the defendant forestalls the completion of a contract on time by terminating it for a reason other than a default in performance upon the part of a contractor and for its own benefit, liquidated damages may not be assessed against the contractor.
*347 The plaintiff’s motion for a new trial is allowed. The former findings are amended by the addition of the appendix referred to in Finding 5, the former opinion of the court is withdrawn, and judgment set aside. Plaintiff is awarded a judgment in the sum of $6,810, for 227 days’ delay at $30 a day, and no other items of the claim are allowed. It is so ordered.
Williams, Judge; LittletoN, Judge; and GeeeN, Judge, concur.