## RAE v. CITY OF READING.
### No. 18544.

District Court, E. D. Pennsylvania.
Sept. 12, 1938.

Alexander N. Rubin, of Philadelphia, Pa., Kenneth G. Jackson and Roy G. Bostwick (of Thorp, Bostwick, Reed & Armstrong), both of Pittsburgh, Pa., and John B. Stevens (of Stevens & Lee), of Reading, Pa., for plaintiff.

Darlington Hoopes, of Reading, Pa., and Robert T. McCracken, of Phildelphia, Pa., for defendant.

MARIS, Circuit Judge.

This was a suit for damages for breach of a contract dated April 5, 1934 between the plaintiff and the defendant providing for the construction by the plaintiff of a water supply tunnel, approximately 2,800 feet long, for the defendant. About 450 feet of the tunnel were to be constructed in open trench and the remainder by tunnel methods. According to plaintiff's testimony, in making his bid and entering into the contract, he relied upon the information furnished by the defendant as to the character of subsoil through which the tunnel was to be driven and the open cut section constructed. In addition to this his son visited the site of the work and examined the conditions existing on the surface, as well as the cores contained in certain boxes in the possession of the defendant, which were represented to have been the cores taken from borings on or adjacent to the line of the tunnel.

The plans furnished to plaintiff and other bidders contained a profile of the results of these borings which were represented to have been made in 1927 and purported to show the nature and character of the subsoil through which the tunnel was to be driven. Between the time the borings were taken and the plans were completed and distributed to bidders the location and elevation of the tunnel were somewhat changed. This resulted in the line of borings being approximately 150 feet away from one end of the tunnel and intersecting its line near the opposite end. When the elevation of the tunnel was changed its line was placed about 30 feet below the bottom of the borings at one end but at the other end they extended down into the tunnel section. The plans indicated that the borings all ended in solid limestone. They also showed an assumed rock line over the line of the tunnel which approximated the rock line which was taken from the borings but was not exactly the same. Typical cross sections of the work were also shown on the plan and all of them indicated the presence of solid rock in the area of the tunnel section.

The plaintiff began work in April, 1934. He elected to drive the tunnel by sinking a shaft at about the middle of the tunnel and driving headings in both directions along the line of the tunnel. This method of operation was approved by the defendant's engineer. The shaft was located opposite bore hole No. 9 at Station 62 on the plan of the line of the tunnel, the location being decided upon because on the plans that bore hole showed solid limestone the entire distance down to the line of the tunnel and the surface at that point was best adapted to setting up the plaintiff's plant.

However, shortly after commencing the work of excavating the shaft, instead of encountering solid limestone, the plaintiff encountered mud, clay and boulders and when the shaft was driven down near the elevation of the tunnel section of the work, water was encountered which, when mixed with the mud and clay, produced a condition which rendered the work very hazardous, difficult and expensive and made necessary heavy timbering and additional pumping equipment. This slowed down the progress of the work and rendered it much more expensive than it would have been had solid limestone been encountered.

While the shaft was being excavated plaintiff complained orally to the defendant's engineers and other representatives of the conditions he was encountering. He continued making these oral complaints of the difference between conditions encountered and as represented on the plans as the work progressed. The defendant's representatives offered no relief to the plaintiff, however, nor did they request that his complaints be put in writing until August 20, 1934. On that day and thereafter his complaints were made in writing.

The plaintiff had entered into a subcontract with Hadesty & Cullen, tunnel contractors, for the excavation by them of the tunnel section of the work but these subcontractors refused to go ahead with the work, complaining that conditions were not as represented on the plans and they quit work on July 21, 1934. The plaintiff, hoping that the condition might prove local, continued with the excavation, in the meantime making tests by diamond drill borings to determine what type of subsoil would be encountered along the line of the tunnel.

Finally on August 20, 1934 the plaintiff filed a written complaint with the defendant's engineer and a number of conferences were thereafter held at which the plaintiff attempted to secure some sort of relief.

In the meantime defendant's engineer had refused to issue to plaintiff an estimate for work done under the contract up to July 31, 1934, which plaintiff contended was required by the contract. Finally on August 28, 1934 plaintiff gave the defendant written notice of his intention to terminate the contract and thereupon rescinded the contract and abandoned the work. Thereafter he brought the present suit contending that his rescission and abandonment was justified by reason of the defendant's misrepresentations of the character of the subsoil and its refusal to make progress payments that he seeks as damages the cost of the work he did in partial performance of the contract. The case was tried to a jury which returned a verdict in the sum of $61,859.41. I submitted to the jury the following interrogatories:

"1. Did the defendant in the plans and specifications upon which the plaintiff bid make material misrepresentations as to the character of the subsoil through which the Maiden Creek water supply tunnel was to be constructed, the falsity of which could not reasonably have been discovered upon an inspection of the site of the work?

"2. If your answer to the first interrogatory is 'Yes,' did the plaintiff rely on the defendant's misrepresentations as to the character of the subsoil in making his bid and entering into the contract with the defendant, and was he damaged thereby?

"3. If your answer to the first and second interrogatories is 'Yes,' did the plaintiff rescind the contract with reasonable promptness after he had ascertained that the misrepresentations as to the character of the subsoil were substantial and not merely local?

"4. Was the plaintiff entitled to a monthly estimate or certificate for work done up to July 31, 1934 which the engineer refused to make and the defendant refused to pay for reasons other than the rate of progress of the work or the amount, quality, acceptability or fitness of the work or materials?

"5. If your answer to the first, second and third interrogatories or to the fourth interrogatory is 'Yes,' what was the cost to the plaintiff of the work which he did under the contract?"

The jury answered each of the first four interrogatories in the affirmative. In answer to the fifth interrogatory the jury reported the plaintiff's cost to have been $50,497.67. The defendant, having submitted a point for binding instructions which I reserved, thereafter moved for judgment in its favor on the point of law reserved and also for a new trial. The defendant has summarized its argument in support of its motion for judgment upon the reserved point as follows: "If plaintiff had the right to rescind for fraud, he waived such right by acting under the contract after full knowledge of his rights. Plaintiff had no right to rescind for non-payment, there being no material breach of the contract, since (a) he had not done enough work under the contract, properly interpreted to be entitled to payment, and (b) there was an honest dispute between the parties. In any event, plaintiff waived such right by invoking the termination clause of the contract. Finally, plaintiff cannot recover under the contract (Paragraph C-45) because he did not prove that a certificate for payment was due from the Engineer."

These points will be discussed in order.

Preliminarily it may be observed that the jury found in answer to the first and second interrogatories submitted to them that the defendant in the plans and specifications upon which the plaintiff bid made material misrepresentations as to the character of the subsoil through which the tunnel was to be constructed, the falsity of which could not reasonably be discovered upon an inspection of the site of the work, and that the plaintiff relied upon these misrepresentations in making his bid and entering into the contract. It is clear that the plaintiff was entitled to rely upon these representations, Funk et al. v. School Dist. of Abington Tp., 321 Pa. 435, 184 A. 659; Passaic Valley S. Com'rs v. Holbrook, Cabot & Rollins Corp., 3 Cir., 6 F.2d 721, and that the exculpating clause contained in paragraph G. 12 of the contract did not operate to relieve the defendant of responsibility for them. United States v. Atlantic Dredging Co., 253 U.S. 1, 40 S.Ct. 423, 64 L.Ed. 735; Passaic Valley S. Com'rs v. Holbrook, Cabot & Rollins Corp., supra. Indeed this was not controverted by the defendant, which in its argument urged that the plaintiff had waived his right to rescind upon this ground by

proceeding under the contract after full knowledge of the facts.

It is clear, however, that the plaintiff was entitled to a reasonable time within which to determine whether the condition he encountered was merely local or whether the misrepresentation was sufficiently substantial and serious to justify his abandonment of the work. He would not have been justified in taking such drastic action unless he had substantial grounds for doing so. On the other hand, if he had proceeded with work under the contract for an unreasonable length of time after having full knowledge of the defendant's misrepresentations, he would have thereby waived his right to rescind. Browning v. Rodman, 268 Pa. 575, 111 A. 877. In view of the conflicting evidence upon this point the question whether the plaintiff delayed an unreasonable length of time in rescinding the contract was for the jury. McGlinn v. Jackson, 86 Pa.Super. 562; Passaic Valley S. Com'rs v. Holbrook, Cabot & Rollins Corp., supra. In its answer to the third interrogatory the jury decided this question in favor of the plaintiff. The verdict establishes the fact, not only that misrepresentations were made upon which the plaintiff relied, but that he rescinded the contract with reasonable promptness after he had ascertained that these misrepresentations were substantial. In my opinion the evidence fully supports the verdict on this point. It may, therefore, not be set aside on the defendant's motion.

The defendant also urges that the plaintiff had no right to rescind for non-payment, since he had not done enough work under the contract, as it interprets it, to be entitled to a monthly payment. As I have indicated, this contention involves an interpretation of certain provisions of the contract. The portions involved are as follows:

"C. 58. Monthly Estimates. Current payments for work done under the contract will be made as follows:

"On or before the tenth day of each month, except as hereinafter noted, the Engineer shall make an approximate estimate of the amount of work done during the preceding calendar month and the value thereof at the prices bid, together with the value of extra materials and labor furnished under extra work orders during the same period. Materials furnished but not incorporated in the work will not be included in the estimate. A copy of the estimate, bearing the Engineer's certification that ninety per cent.

(90%) thereof is payable, shall be transmitted to City Council. The amount thus certified shall be paid to the Contractor on or about the twentieth day of the month. It is hereby agreed and understood by and between the parties to this contract that the final estimate shall be computed from the quantities of materials and work which shall have been furnished and done, as the Engineer's final measurements of the work shall determine, the monthly estimates presented being only approximate; and that no claims growing out of misconception of the quantities or kinds of work, or any errors in the approximate statement of them in the monthly estimates, are to be made or allowed, or considered valid. It is further agreed and understood that inclusion of any portion of the work in the monthly estimate shall not be construed as final approval or acceptance of the same.

"C. 59. Minimum Monthly Estimate. It is expressly understood that monthly estimates shall be made only where the work shall have progressed in accordance with the provisions of this contract and the accompanying specifications and drawings, and when the amount of work done since the last preceding estimate shall amount to at least Five Thousand Dollars ($5,000) unless, in the opinion of the Engineer, the rate of progress has been satisfactory under the circumstances and gives promise that the contract will be completed within the time specified. Payment may be withheld at any time if the work is not proceeding in accordance with the contract. * * *

"C. 66. Prices. The party of the first part agrees to pay, and the Contractor agrees to receive, the prices * * * hereinafter set forth. * * *

"Item No. 4C. For tunnel, including lining, circular section, 6'-9" diameter, Alternate 'C', the sum of Fifty-four dollars and Seventy cents ($54.70) per lin. ft.

"Item No. 5C. For conduit in open trench, circular section, 6'-9" diameter, Alternate 'C', the sum of Fifty Dollars ($50.-00) per lin. ft."

The plaintiff received no estimate or progress payment for work done prior to August 1, 1934. He concedes that the work which he had fully completed prior to that date amounted to less than $5,000 at the prices bid but claims that he was entitled to payment for tunnel and open trench fully excavated even though not lined, the value of which was far more than that sum. The defendant, on the other hand, contends that

under the contract provisions above quoted the plaintiff was not entitled to monthly progress payments for those portions of the tunnel and open trench which although fully excavated were not yet completed by the installation of the concrete lining. In support of his contention the plaintiff offered evidence of a well settled custom in the construction industry to construe such a ·contract as permitting progress payments for completed excavation work, even though the tunnel lining was not installed, the payments to be based upon a proper proportion of the unit price for the completed work. I am satisfied that this evidence was relevant and properly admitted. Electric Reduction Co. v. Colonial S. Co., 276 Pa. 181, 120 A. 116; Passaic Valley Sewerage Com'rs v. Tierney, 3 Cir., 1 F.2d 304. It fully justified a finding by the jury that the plaintiff had done more than $5,000 worth of work up to July 31st, and was, therefore, entitled to an estimate and progress payment on August 20th, under paragraph C. 58. Furthermore I am satisfied, as I held at the trial, that so much of paragraph C. 59 as provides that monthly estimates shall only be made where $5,000 in value of work has been done since the last preceding estimate, does' not apply to the first estimate made under the contract. Since admittedly no estimates had been made for the plaintiff prior to July 31st it would follow that he was entitled to an estimate up to that date for the work admittedly completed, even though it should be held that he had not done $5,000 worth of work within the meaning of the contract.

Paragraph C. 6 of the contract provided that the engineer should finally determine the amount, quality, acceptability and fitness of the several kinds of work and materials which were to be paid for thereunder and should decide all questions which might arise as to measurement of quantities and the fulfillment of the conditions of the contract on the part of the contractor. The plaintiff's contention was that his rescission of the contract was not based upon any questions coming within the jurisdiction of the engineer under this paragraph. I accordingly submitted to the jury by the fourth interrogatory the question whether the plaintiff was entitled to a monthly estimate or certificate for work done up to July 31st, which the engineer refused to make and the defendant refused to pay for reasons other than the rate of progress of the work or the amount, quality, acceptability or fitness of the work or materials. Its

answer in the affirmative established the fact that the defendant's refusal to give the plaintiff the monthly estimate to which he was entitled was for reasons other than those as to which the decision of the engineer was final under the contract.

The defendant contends, however, that there was an honest dispute between the parties as to the right to a progress payment for work done up to July 31st, and consequently the plaintiff was not entitled to rescind because of the defendant's refusal to make that payment. Without passing upon the question of law suggested by this proposition it is sufficient to point out that in my charge to the jury I·not only affirmed the defendant's first point which dealt with this question but also in elaboration thereof specifically instructed the jury that the plaintiff would not be entitled to rescind because of the failure to make the payment if there was an honest dispute between the parties with regard to the amount payable or some other feature of the payment. The jury's verdict for the plaintiff accordingly amounted to a finding that there was no honest dispute on this point.

■■■ Defendant further urges that the plaintiff, in any event, waived his right to rescind the contract for nonpayment by proceeding under its termination clause. Its argument is that since in his written notice of August 28th he gave the defendant seven days' notice that the contract would be terminated he must be held to have acted under the termination clause contained in the contract and not in rescission thereof. ·In construing such a notice, however, all the facts, circumstances and actions of the parties must be taken into consideration in arriving at the intention of the party, and technical words will not be given their technical meaning if it is clear the party using them intended otherwise. United States v. O'Brien, 220 U.S. 321, 31 S.Ct. 406, 55 L.Ed. 481. Here the evidence indicated that the plaintiff did not wait the seven days mentioned in his notice but immediately abandoned the work. His action was construed by the defendant's officers at the time as an abandonment. The verdict of the jury and its answers to the interrogatories submitted to it have established the fact that the plaintiff rescinded the contract, not only on the ground of misrepresentation in its inception, but also on the ground of failure to make a monthly progress payment which was required by the contract. Upon the plaintiff's view of the case, which the jury

572

adopted, rescission was justified upon the latter ground irrespective of any termination clause contained in the contract. United States F. & G. Co. v. Robert Grace C. Co., 3 Cir., 263 F. 283; Guerini Stone Co. v. P. J. Carlin Construction Co., 248 U.S. 334, 39 S.Ct. 102, 63 L.Ed. 275; Turner Concrete Steel Co. v. Chester Construction & Contracting Co., 271 Pa. 205, 114 A. 780.

 As a final argument in support of its motion for judgment the defendant contends that the plaintiff cannot recover in view of the termination clause contained in the contract. This appears in paragraph C. 45 and provides that if the engineer should fail to issue any certificate for payment within seven days after it is due, or if the City should fail to pay to the Contractor within seven days any sum certified by the engineer, then the Contractor may, upon seven days' written notice, stop work or terminate the contract and recover from the City payment for all work executed and any loss sustained and reasonable profit and damages. The plaintiff's suit was not brought under this clause, however, but on the contrary, as I have indicated, he has sued for damages in rescission. His suit was not brought under the contract but in disaffirmance of it. Under such circumstances he is entitled to damages upon showing that he was entitled to rescind by reason of the default of the defendant. United States v. Behan, 110 U.S. 338, 4 S. Ct. 81, 28 L.Ed. 168; Anvil Mining Co. v. Humble, 153 U.S. 540, 14 S.Ct. 876, 38 L. Ed. 814; United States v. Spearin, 248 U. S. 132, 39 S.Ct. 59, 63 L.Ed. 166. As I have already indicated, the facts as found by the jury fully support his right to rescind the contract upon each of the two grounds upon which rescission was based. It follows that he was entitled to recover damages irrespective of the provisions of paragraph C. 45 of the contract, although, since that paragraph authorizes an award of damages to the contractor terminating a contract under it, I see no reason why it would not support the verdict obtained by the plaintiff in this case.

What has been said disposes also of most of the arguments advanced by the defendant in support of its motion for a new trial. Its remaining arguments in support of this motion are based almost entirely upon the erroneous premise that the plaintiff's sole remedy was under paragraph C. 45 of the contract and that he had no right to sue in rescission of it. However, I have carefully considered all of them and I am satisfied that they are without merit. The issues in the case were submitted to the jury in a charge in which the position of the defendant was, I think, fully and fairly stated. By the findings and verdict of the jury these issues were resolved in favor of the plaintiff. No sufficient reason has been shown why its determination of them should be set aside.

The defendant's motions for judgment in its favor on the point of law reserved and for a new trial are refused.