## AMERICAN SURETY CO. v. UNITED STATES.

### No. 10229.

Circuit Court of Appeals, Ninth Circuit.

June 24, 1943.

Sterling M. Wood and Robert E. Cooke, both of Billings, Mont., for appellant.

Francis M. Shea, Asst. Atty. Gen., Leavenworth Colby, Atty., Department of Justice, Washington, D. C., and John B. Tansil, U. S. Atty., and R. Lewis Brown, Asst. U. S. Atty., both of Butte, Mont., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

One Grogan entered into a contract with the United States for the erection of some buildings at the Government inspection station at Babb-Piegan, Montana. Appellant wrote the bond securing the performance of the contract. Grogan's time for the completion of the buildings expired June 20, 1933, at which date the work was only partially completed. However, the Government permitted him to continue with it for thirteen months thereafter, or until July 20, 1934, at which time the job was still uncompleted. Grogan was then notified that his right to proceed under the contract was terminated; and the Government thereupon took over the work and finished it.

The contract is the standard form of construction contract. Article 9 thereof, so far as pertinent, reads as follows:

"Delays—Damages.—If the contractor refuses or fails to prosecute the work, or any separable part thereof, with such dili-

gence as will insure its completion within the time specified in Article 1, or any extension thereof, or fails to complete said work within such time, the Government may, by written notice to the contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event, the Government may take over the work and prosecute the same to completion by contract or otherwise, and the contractor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby. If the contractor's right to proceed is so terminated, the Government may take possession of and utilize in completing the work such materials, appliances, and plant as may be on the site of the work and necessary therefor. If the Government does not terminate the right of the contractor to proceed, the contractor shall continue the work, in which event the actual damages for the delay will be impossible to determine and in lieu thereof the contractor shall pay to the Government as fixed, agreed, and liquidated damages for each calendar day of delay until the work is completed or accepted the amount as set forth in the specifications or accompanying papers and the contractor and his sureties shall be liable for the amount thereof; * * *."

The liquidated sum agreed upon was $25 per day.[1]

In this suit, which is against the surety alone, the court awarded two items of damage: (1) the sum of $2,044.04 as the excess cost of completing the structures; and (2) the sum of $9,785.00 as liquidated damages for the delay of 395 calendar days elapsing between the date the work should have been completed under the terms of the contract and July 20, 1934—the date when the Government itself took over. The main dispute here concerns the latter award.

Counsel for the Government say that Article 9 covers three distinct situations:

(1) where, at or before the date fixed for completion, the Government elects to terminate the contractor's right to proceed and takes over the work itself or through some other contractor; (2) where the Government elects to allow the contractor to continue after the date specified for completion, and the contractor finishes the work late; and (3) where the Government elects to allow the contractor to continue after the date specified for completion, but the contractor fails to finish the work even at a later date, and the Government then elects to terminate his right to proceed and finishes the work itself or through another contractor. The parties are agreed that in situation (1) the liquidated damages provision is not operative, and that in situation (2) it is. The point of disagreement is whether the provision is operative in situation (3), or, to state the disagreement more specifically, whether Article 9 makes any provision for a case like the present.

▮ It is to be observed that there is here no question of actual damages recoverable under principles of the common law. The inquiry relates merely to the reach of a special stipulation agreed upon as a substitute for the ordinary mode of proving damages. By its very nature a stipulation for liquidated damages has no force save in the contingency made the subject of the special agreement.[2] To extend the stipulation to other contingencies by a process of reasoning or by analogy would amount to a rewriting of the contract.

▮ Under this contract not all inexcusable delays are made compensable by payment of the stipulated sum. Thus where the contractor breaches his agreement to finish the work within a specified time and the Government declines to allow him to proceed beyond the completion date, vexatious delays resulting in the temporary loss of use of a needed structure inevitably ensue; but in such contingency the Gov-

[1] The Act of June 6, 1902, 32 Stat. 326, 40 U.S.C.A. § 269, provides: "In all contracts entered into with the United States for the construction or repair of any public building or public work under the control of the Treasury Department, a stipulation shall be inserted for liquidated damages for delay; and the Secretary of the Treasury is authorized and empowered to remit the whole or any part of such damages as in his discretion may be just and equitable; and in all suits commenced on any such contracts or on any bond given in connection therewith it shall not be necessary for the United States, whether plaintiff or defendant, to prove actual or specific damages sustained by the Government by reason of delays, but such stipulation for liquidated damages shall be conclusive and binding upon all parties."

[2] 15 Am.Jur., Damages, § 261; Wise v. United States, 249 U.S. 361, 39 S.Ct. 303, 63 L.Ed. 647.

ernment has limited itself to the recovery of excess costs plus such other damages, not inconsistent with the contract, as are recoverable under general legal principles. In what contingency, then, is delay here made compensable by the exaction of the stipulated sum? The sole contingency specified is "if the Government does not terminate the right of the contractor to proceed." The situation contemplated—or at any rate agreed upon—is one where the contractor, although failing to complete the work on time, is allowed to continue with it to completion or acceptance. In that event only, it was agreed, a specific sum was recoverable in lieu of the damages actually sustained but thought incapable of proof. What the trial court did was to extend the agreement to a different situation, one in which it might well have been, but was not, agreed that the stipulation should govern.

■ Counsel for the Government make this argument: "If the right to delay damages is conditioned upon the government's never taking over the work no matter how long the contractor's delay nor what the reason for it, then in every case the contractor and his surety can avoid liability for delay damages by the easy expedient of refusing to fulfill his obligation to continue the work, stopping just short of completion, and forcing the government to take over." The argument appears to neglect the right of the Government to recover actual damages for delay, or to confuse that right with the totally different one in dispute here. The Government had the option of terminating Grogan's right to proceed at any time after June 20, 1933. When it finally did so because of Grogan's continuing default, its action rendered the stipulation for liquidated damages inoperative. The stipulation simply vanished from the picture, so that neither party is in a position to invoke it. But it does not follow that the Government was thereby stripped of the right to recover such actual damages for the delay as it might be able to prove. Inability of the Government to make the necessary proof affords no justification for stretching the

agreement to fit the Government's necessities.[3]

The Court of Claims, in a number of cases, has had occasion to interpret this article of the standard contract and has reached the same conclusion as ourselves, albeit by a somewhat different route.[4] So also has the Court of Appeals of the District of Columbia.[5] No other cases dealing directly with the point have been called to our attention.

■ Appellant takes exception also to the award of excess costs. As to this item the court found that because of Grogan's failure to perform his contract the Government necessarily expended the sum of $2,044.04 more in causing the work to be done and in completing the contract than it would have been required to pay out had Grogan duly performed. It is claimed that the proof is insufficient to support this finding or to justify the award.

We do not agree. It was shown that the surety was given notice that a Government construction engineer would take inventory of the state of the work, and an invitation was extended the surety to have a representative present. The surety was requested also to advise whether it desired to complete the work. The only response to these invitations was a request by the surety that the contracting officer obtain bids and award the contract for completion to the lowest bidder.

This the officer proceeded to do. A contract was let for the performance of all work and the furnishing of all labor and materials "required for completion of the construction of the Inspection Station at Babb-Piegan, Montana." The surety has not challenged the reasonableness or good faith of the determination by the contracting officer embodied in the latter's specifications as to the work necessary to carry the project to completion. It made no effort to show any discrepancy between the specifications of the original contract and those of the contract let for completion of the work. By Article 15 of the Grogan contract the parties had agreed that the contracting officer or his representative should decide all disputes concerning ques-

3 Cf. United States v. O'Brien, 220 U. S. 321, 31 S.Ct. 406, 55 L.Ed. 481; Stone Sand & Gravel Co. v. United States, 234 U.S. 270, 34 S.Ct. 865, 58 L.Ed. 1308.

4 Fidelity & Casualty Co. of N. Y. v. United States, 81 Ct.Cl. 495; Commercial Casualty Insurance Co. v. United States,

83 Ct.Cl. 367; American Employer's Insurance Co. of Boston v. United States, 91 Ct.Cl. 231; Maryland Casualty Co. v. United States, 93 Ct.Cl. 247.

5 United States v. Cunningham, 75 U. S.App.D.C. 95, 125 F.2d 28.

tions of fact arising thereunder. Grogan's default and the surety's ensuing request made it necessary for the contracting officer to determine what must be done to complete Grogan's undertaking. In performing this duty the contracting officer had to make a determination of fact. The officer's determination, we think, was inseparable from the duty resting on him under the contract, the performance of which appellant had guaranteed.

In respect of the award of liquidated damages the judgment is reversed. As regards the award of excess costs it is affirmed.

HANEY, C. J., did not participate in the consideration or decision of this case.