999 F.2d 544
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ramon ALVAREZ, aka Jose Rodriguez-Rodriguez, Defendant-Appellant.
 No. 91-50848.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 4, 1992.*
Decided July 22, 1993.
 
 Before: BEEZER, KOZINSKI, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ramon Alvarez pleaded guilty pursuant to a written plea agreement. If he pleaded guilty, truthfully disclosed information and testified, and committed no further crimes, then the government was obligated to recommend a downward departure. If he did not perform these conditions, then the agreement was to be "null and void." Alvarez did not perform the conditions, so the government refused to recommend the departure downward. He appeals, claiming that the district court should have ordered the government to perform its promises anyway, or else should have allowed him to withdraw his plea. We affirm.
 
 I. Facts
 
 3
 Alvarez pleaded guilty to conspiracy to possess cocaine with intent to distribute, 21 U.S.C. §§ 846 and 841(a)(1), and possession of an unregistered firearm, 26 U.S.C. § 5861(d). According to the colloquy when he entered his plea, Alvarez and another man, Bravo, arranged to buy $1 million worth of cocaine from undercover agents. Their real intention was to steal the cocaine from the agents instead of paying for it, aided by a fully automatic MAC-10 machine gun with silencer concealed at Alvarez's residence. The statutory maximum imprisonment was twenty years for the conspiracy count, and ten years for the weapon.
 
 
 4
 When the judge asked Alvarez at the plea proceedings if he understood that he would not be allowed to withdraw his plea even if the guideline sentencing range turned out to be higher than he expected, Alvarez did not respond, and his attorney suggested that Alvarez was confused because the plea bargain provided for a recommendation of a downward departure. The judge then ensured that defendant understood that the guidelines sentence would be considerably higher than the sentence under the agreement, but whether the government made the recommendation would depend on Alvarez's compliance with the conditions. The judge explained that although he would not be bound by the government's departure recommendation, generally he followed such recommendations. Alvarez would not be allowed to withdraw his plea even if his attorney incorrectly computed the guidelines sentence or the judge chose not to follow the government's recommendation for a downward departure.
 
 
 5
 The plea agreement provided, in relevant part:
 
 
 6
 1. The United States will accept a guilty plea....
 
 
 7
 * * *
 
 
 8
 4. The defendant agrees that he shall truthfully disclose all information....
 
 
 9
 * * *
 
 
 10
 6. If defendant abides by the provisions of this agreement, the Government will recommend a downward departure from the sentencing guidelines and recommend five years in custody.
 
 
 11
 7. The defendant understands that the sentence to be imposed is within the sole discretion of the sentencing judge, and the United States has not, and will not, make any promises or representations as to what sentence the defendant will receive.
 
 
 12
 * * *
 
 
 13
 10. ... A further condition of this agreement is that the defendant must not commit any further crimes. Should it be established that the defendant has intentionally provided materially false, incomplete, or misleading testimony or information, or has otherwise violated any provisions of this plea agreement, this plea agreement shall be null and void, and defendant shall thereafter be subject to prosecution for any federal criminal violation of which the United States Government has knowledge, including but not limited to perjury and obstruction of justice.
 
 
 14
 Shortly before he was to be sentenced, Alvarez was placed in a cell with Bravo, against whom he was to provide evidence pursuant to his plea agreement. The government has offered no explanation for this bizarre placement. When Alvarez was taken from his cell to the United States Attorney's office, he refused to answer government questions, violating the condition of his plea agreement that he truthfully disclose all information. Alvarez was then brought into court, where he said "I do not want to proceed into any agreement," and requested a new attorney. He claimed that when he pleaded guilty, he was under the influence of drugs and was under pressure from the prosecutor and his attorney. The judge warned him that the appointment of new counsel did not mean he was entitled to withdraw his plea, and the guideline sentencing range was 210 to 262 months. Sentencing was postponed to give Alvarez an opportunity to confer with his new attorney.
 
 
 15
 That night, Alvarez and Bravo took a prison guard hostage in their cell. The hostage standoff lasted seventeen hours. They were indicted and sentencing in Alvarez's cocaine case was postponed pending disposition of the hostage case. Alvarez presented a defense of duress, urging that Bravo had forced him to engage in the crimes, but the jury rejected it. Alvarez was convicted of kidnapping, hostage taking, attempted escape, and escape. He was sentenced to life imprisonment, to run consecutive to any sentence imposed in the cocaine case.
 
 
 16
 This appeal arises from Alvarez's motion to specifically enforce his plea agreement, or else withdraw his plea. He urged that the government be required to recommend departure downward, even though he did not perform the conditions of his agreement, because his failure to comply was the government's fault, for putting him in a cell with Bravo. Bravo testified in the hostage trial that his lawyer told him Alvarez was going to testify against him. Bravo heard that Alvarez was going to be put in his cell. He then made two "shanks" out of sharpened pieces of metal from a mop, with handles formed by wrapping pieces of bedsheet around the metal, which he used to persuade Alvarez not to "snitch on" him. Alvarez did not assert innocence in his motion; rather, he claimed that his plea agreement was based on the promise of a recommendation which would in all likelihood lead to a five year sentence, and he should be excused from his failure to perform the conditions, or at least released from the plea, because the government had made it impossible for him to perform the conditions. In the motion, Alvarez claims to be ready to perform his part of the bargain, evidently having been separated form Bravo after they took the guard hostage. He claims that he would not have pleaded guilty without the agreement for the recommendation for a downward departure to five years. The government, in response, offered no justification for putting Alvarez in the same cell with Bravo.
 
 
 17
 The district judge denied specific enforcement because Alvarez had violated the condition that he not commit additional crimes. His conviction in the hostage case meant that the contractual condition of no further crimes could not be excused by duress, because the duress defense to the crime was rejected by the jury. The judge denied the motion to withdraw the plea, because Alvarez did not assert his innocence, and had received substantial benefits even without the departure downward. The benefits were substitution of charges which did not specify a particular amount of cocaine, and no additional charge based on the firearms. Alvarez was sentenced to 240 months for conspiracy to possess cocaine and 22 months consecutive for possession of a machine gun, the top of the guideline range for the grouped offenses. During allocution, Alvarez reiterated personally his request that he be permitted to withdraw his guilty plea if the court could not require the government to recommend a downward departure to five years.
 
 
 18
 II. Analysis.
 
 
 19
 Although "plea bargaining is not a private contractual arrangement unaffected by the public interest," United States v. Fine, 975 F.2d 596, 604 (9th Cir.1992) (en banc), plea agreements are "contractual in nature and [are] measured by contract-law standards." United States v. Read, 778 F.2d 1437, 1441 (9th Cir.1985), cert. denied, 479 U.S. 835 (1986); accord United States v. Escamilla, 975 F.2d 568, 571 (9th Cir.1992). When the government breaches a plea bargain, it may be appropriate for the court to order "specific performance" of the agreement or to allow the defendant to withdraw the guilty plea. United States v. Anderson, 970 F.2d 602, 608 (9th Cir.1992); United States v. Partida-Parra, 859 F.2d 629, 633 (9th Cir.1988). "On the other hand, where the defendant breaches the plea bargain, courts have found the government to be free from its obligations under the plea agreement." Partida-Parra, 859 F.2d at 633. We review the district court's denial of the motion to withdraw the plea for abuse of discretion. United States v. Oliveros-Orosco, 942 F.2d 644, 645-46 (9th Cir.1991).
 
 
 20
 A. Specific Enforcement.
 
 
 21
 The district judge correctly denied Alvarez's motion for specific enforcement. Even assuming that Alvarez's failure to give truthful information was excused by the government's putting him in a cell with Bravo, he breached the condition that he "must not commit any further crimes." Since the jury in the hostage case did not find even a reasonable doubt that duress excused the crimes, the judge properly rejected the suggestion that Alvarez was entitled to have his failure to perform this condition of his plea bargain excused.
 
 
 22
 B. Withdrawal of plea.
 
 
 23
 Alvarez's motion to withdraw his plea presents a more difficult issue. Under Fed.R.Crim.P. 32(d), if a motion is made before sentencing, the court "may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." See United States v. Garcia, 909 F.2d 1346, 1348 (9th Cir.1990); United States v. Rios-Ortiz, 830 F.2d 1067, 1069 (9th Cir.1987). Contract law principles inform our determination of whether a fair and just reason has been demonstrated by the defendant. See, e.g., United States v. Zweber, 913 F.2d 705, 710-11 (9th Cir.1990). Alvarez faced 210 to 262 months instead of 60, about four times what he expected in exchange for his plea, because of his breach of the conditions of his agreement. But his loss of the expected benefits because of his breach of the conditions did not necessarily entitle him to withdraw the guilty plea entered pursuant to that agreement. See United States v. Head, 927 F.2d 1361, 1375-76 (6th Cir.), cert. denied, 112 S.Ct. 144 (1991); United States v. Tilley, 964 F.2d 66, 71-72 (1st Cir.1992); cf. Rios-Ortiz, 830 F.2d at 1069.
 
 
 24
 A change of heart, as might be stimulated by the discovery that the guideline sentence recommended by the probation officer was more severe than the defendant expected, would not justify withdrawal of the plea. Cf. Rios-Ortiz, 830 F.2d at 1069. But Alvarez did not merely change his mind, or react to an unpleasant surprise in the probation officer's report. His plea agreement became "null and void," quadrupling his sentence, and depriving him of most of the value which had induced him to plead guilty.
 
 
 25
 Alvarez breached a condition that he commit no further crimes, which breach excused the government from performance of its conditional obligation to recommend a downward departure. The problem is that Alvarez had already performed part of the agreement, by changing his plea, and the government had performed part, by dismissing the original charges and substituting others. Alvarez sought and was denied a remedy of withdrawing his plea, that is, restoring to him the benefit he had conferred on the government. This is traditionally analyzed as an issue of restitution in favor of a party in breach. Under the Restatement, the problem is resolved as follows:
 
 
 26
 § 374. Restitution in Favor of Party in Breach
 
 
 27
 (1) Subject to the rule stated in Subsection (2), if a party justifiably refuses to perform on the ground that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or reliance in excess of the loss that he has caused by his own breach.
 
 
 28
 (2) To the extent that, under the manifested assent of the parties, a party's performance is to be retained in the case of breach, that party is not entitled to restitution if the value of the performance as liquidated damages is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss.
 
 
 29
 Restatement (Second) of Contracts § 374 (1981). Accord Williston On Contracts § 1473-74 (3d ed. 1970) (weight of authority holds that breaching party may generally recover payment for partial performance on principles of quasi contract); Harriman v. Tetik, 56 Cal.2d 805, 811, 17 Cal.Rptr. 134, 137 (1961) (in bank) (to avoid unjust enrichment, even a willfully defaulting party may recover consideration paid to the extent he could show it exceeded damages to other party).
 
 
 30
 In this case, the government did not fail to perform a promise. Its promise was conditional, and Alvarez breached the plea agreement by failing to perform the conditions. The government is the party which suffered a breach, but Alvarez has conferred on it a substantial benefit which he seeks to take back. His guilty plea saves the government the burden of proving the charges against him and the risk of losing. "It is often unjust to allow the injured party to retain the entire benefit of the part performance rendered by the party in breach without paying anything in return." Restatement (Second) of Contracts § 374, comment a.
 
 
 31
 The question is whether the unavailability of what Alvarez reasonably expected to gain from the plea, a recommendation for departure downward to five years, taken together with the "null and void" phrasing of the agreement and the other circumstances of the case, amount to "fair and just reason" to withdraw the plea. We conclude that it was not an abuse of discretion to find that they did not.
 
 
 32
 We are troubled by the term "null and void" in the plea agreement. The term "null and void" has been disfavored in contracts at least since 1910-1911, when Justice Holmes characterized such language as "ill chosen" because it could not possibly mean what it said. Stewart v. Griffith, 217 U.S. 323 (1910); United States v. O'Brien, 220 U.S. 321 (1911). Taken literally, the words mean that the contract binds no one, has no effect, and cannot under any circumstances give rise to any rights or obligations. Ballentine's Law Dictionary 871 (3d ed. 1969); Black's Law Dictionary 962 (5th ed. 1979). But that can rarely be so. In context, usually "void means voidable at the vendor's election and the condition may be insisted upon or waived at his choice." Stewart, 217 U.S. at 329. The similar "ill chosen" term "annul" "cannot be taken literally" and usually means "refuse to perform further, not rescind or avoid." O'Brien, 220 U.S. at 328.
 
 
 33
 The agreement could have said that if Alvarez failed to perform the conditions, then he would nevertheless be bound by his plea, and the government would not be bound to recommend a departure. But it did not say that. It said if Alvarez did not perform the conditions, then the agreement would be "null and void," and Alvarez would be subject to prosecution. Taken literally, that appears to mean that Alvarez would be prosecuted as though there had never been a plea agreement. In the colloquy when Alvarez changed his plea, however, Alvarez confirmed that he understood that "whether the government makes that recommendation is determined as to whether, in the opinion of the government, you have complied with the terms and conditions of the agreement." That meant Alvarez would be bound even if the government did not recommend a departure downward because of Alvarez's failure to perform the conditions.
 
 
 34
 Despite the poor phrasing of the agreement, we conclude the standard of review, abuse of discretion, requires that we defer to the district court determination. Under the terms of the colloquy, Alvarez would be bound by his plea even if the government did not recommend departure downward because of his breach of conditions. Alvarez did not get what he hoped for--a five year sentence. But he got what he bargained for--a promise by the government to recommend downward departure if he cooperated and committed no further crimes. Two other circuits, considering similar questions, have decided in favor of holding defendants to their pleas. United States v. Head, 927 F.2d 1361, 1375-76 (6th Cir.), cert. denied, 112 S.Ct. 144 (1991); United States v. Tilley, 964 F.2d 66, 71-72 (1st Cir.1992). The district judge gave appropriate and substantial reasons for his exercise of discretion, and we cannot say that he abused it.
 
 
 35
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3